UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Case No. 09-cv-01207-WYD

MARK WILTING,

    Plaintiff,

v.

MICHAEL J. ASTRUE, as acting Commissioner
of the Social Security Administration,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits under the Social Security Act ["the Act"]. For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.     BACKGROUND

Plaintiff was born in 1955, and was 50 years old on his alleged onset of disability date and 53 years old on the date of the ALJ's decision. (Transcript ["Tr."] 21.) Plaintiff has at least a high school education (*id*. 29, 109-10), and worked as a cosmetologist (hairstylist) between 1989 and September 15, 2004, the date he last worked. (*Id*. 54, 106.) Prior to that, Plaintiff was enlisted in the United States military from 1975 through 1979 when he received a medical discharge due to lung and asthma problems.

In February 2007, Plaintiff filed an application for disability benefits under Title II of the Act, 42 U.S.C. §§ 401-33 (Tr. 86-91), claiming that he became disabled on September 15, 2004, due to asthma, knee and back problems, and depression. (*Id.* 105.) The Colorado Disability Determination Services denied Plaintiff's claim at the initial determination stage. (*Id.* 58-62.) A hearing was requested and an Administrative Law Judge ["ALJ"] held a hearing on October 22, 2008. (*Id.* 22-57.)

The ALJ issued a decision on January 23, 2009. (Tr. 8-21.) He first found that Plaintiff met the insured status requirements of the Act through March 31, 2009, and that he had not engaged in substantial gainful activity since July 15, 2005, the amended alleged onset date. (*Id.* 13, Findings 1 and 2.) At step two the ALJ found that Plaintiff had the severe impairment of asthma. *(Id.,* Finding 3.) At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments. (*Id.* 15, Finding 4.)

The ALJ then found that Plaintiff had the residual functional capacity ["RFC"] to perform light work as defined in 20 C.F.R. § 404.1567(b) except he must avoid exposure to temperature extremes, fumes, dusts, odors, gasses and poor ventilation. (Tr. 18.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work due to his non-exertional limitations. (*Id.* 19.) At step five, relying on the testimony of a vocational expert, the ALJ found that there were unskilled, light jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.* 20, Finding 10.) Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act from September 15, 2004, through the decision. (*Id.* 21.)

The Appeals Council declined review of the ALJ's decision (Tr. 1-3), making this the final agency decision. This appeal followed.

II. ANALYSIS

A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). I find for the reasons discussed below that this case must be remanded to the Commissioner for further fact finding.

B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain on his ability to work. According to Plaintiff, the ALJ not only failed to consider all of the regulatory factors required in evaluating those complaints, but also

failed to take into account the side effects of Plaintiff's medications and their effect on his ability to work. He asserts that these effects are documented by the medical evidence as well as the opinion of Robert Shaffer, NP-C, Plaintiff's main treating medical provider.[1] Plaintiff contends that his side effects are also consistent with the known side effects of his multiple medications. Thus, it is argued that the ALJ's finding that Plaintiff's testimony was not credible is not based on substantial evidence. Plaintiff also asserts that the ALJ erred in discrediting Robert Shaffer's opinion because he did not set forth reasons substantially supported by evidence.

Turning to my analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the [ALJ's] residual functional capacity assessment." (Tr. 17.) The ALJ acknowledged that Plaintiff "has some limitations in his ability to perform work-like activities due to his medically determinable impairments", but found Plaintiff "credible only to the extent he is limited to the [RFC] assessment" of the ALJ. (*Id.*)

In so finding, the ALJ stated that Plaintiff "[had] described a degree of limitation from his asthma and back pain which [was] unsupported by the objective evidence of record, the nature and frequency of his medical treatment and his own activities of daily living." (Tr. 17.) The ALJ then discussed Plaintiff's asthma symptoms and medication and noted as to back pain that it was not verified by objective findings. (*Id.*)

---

[1] "NP-C" stands for a Nurse Practitioner, Certified.

I first address the analysis of pain. As noted above, the ALJ appeared to completely discount the complaints of pain because they were not verified by objective findings. (Tr. 14, 17.) The ALJ stated, for example, that "there are no objective records in the file showing degenerative changes in [Plaintiff's] lumbar spine." (*Id.* 14.) This is not accurate. (*Id.* 391-radiology reports showing that Plaintiff had mild/moderate degenerative disc disease, 393-"posterior bulging disc at multiple levels . . . with mild foraminal encroachment", 396-x-rays revealed arthritis and degeneration; 388-MRI of spine finding disc bulging, arthropathy, and "foraminal narrowing".)

Thus, the record contained objective medical findings of an impairment which could reasonably be expected to produce the alleged pain. The record also contained other objective findings which supported Plaintiff's complaints of pain. (Tr. 221 and 249- "Pt has tenderness in the low lumbar area with palpation and any bending or twisting. He has good ROM but causes discomfort", 260-"radicular pain to R thigh, intermittent pain throughout sciatic nerve distribution, mod central LEP", "lumbar ROM wfl but pain with forward flex and rot", 276, 361, 368, 388.) Further, the medical records are replete with references to and diagnoses of chronic low back pain and chronic knee pain. (*Id.* 219, 233, 235, 247, 250, 260-61, 309, 374, 397.) Plaintiff was also prescribed medication for the pain (*id.* 225) and treating source Robert Shaffer stated he discussed the pain issues with Plaintiff and agreed upon a plan of management for same. (*Id.* 219.) Based on the foregoing, I find that the ALJ was required to conduct a proper analysis of Plaintiff's pain as set forth in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir.

1987). The ALJ erred in not conducting such an analysis and in simply discounting the complaints. This error alone requires a remand to the Commissioner.

I also find that the ALJ erred in selectively applying the evidence regarding pain and/or impairments that could cause pain. For example, the ALJ discounted Plaintiff's complaints of pain based on the fact that he had "full range of motion", "no gait disturbance", and no indication of "muscle atrophy, weakness, etc." (Tr. 14.) However, he ignored the evidence cited previously that documented objective findings which supported the complaints of pain. *See Carpenter v. Chater*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quotation omitted).

The ALJ also made improper lay judgments about what the medical evidence meant as to the severity of Plaintiff's pain and impairments related to same. Thus, he rejected Plaintiff's musculoskeletal problems as severe or as causing pain because an MRI of Plaintiff's cervical spine "showed mild disc bulging at multiple levels, but no indication of true neurological compromise or stenosis" and because Plaintiff's "physical examinations have not shown any decreased range of motion, weakness, or an inability to use his hands." (Tr. 14.) However, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quotation omitted); *see also Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (a medical doctors's statements about

-6-

Plaintiff's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence).

I also find that the ALJ did not properly assess Plaintiff's complaints regarding his asthma and limitations due to same. The ALJ stated on this issue:

> Regarding his asthma, the claimant stated he has to use a nebulizer 4-5 times a day for 15-20 minutes at a time. When experiencing an asthma attack he becomes dizzy and has to lie down for ½ an hour. He experiences attack [sic] 5-6 times per day. He takes long term Singulair, Advair 500, and sterofederin. He also has a portable nebulizer and hand-held inhalers. He said his condition is affected by pollen, hair sprays, perfumes, dust, nervousness, stress, wind, temperature extremes and close quarters. He fears people because he is afraid of catching a cold. He also reported problems driving when he is medicated due to dizziness and lack of concentration. He feels his asthma is getting worse and he does not feel he would be able to sustain employment.

(Tr. 16-17.) The ALJ found Plaintiff not fully credible, as discussed previously, and stated that while he "clearly has limitations arising from asthma. . . the records from his treating medical source throughout the relevant time frame indicate that with the use of prescribed medications the claimant's asthma difficulties are under fairly good control." (*Id.* 19.)

I find, however, that the evidence is not as clear cut on this issue as the ALJ suggests. While the records do refer at times to the asthma being controlled by medication, there are also many references to continued problems with and/or exacerbations of Plaintiff's asthma. (Tr. 217, 219, 247, 251, 253, 254, 255.) Indeed, one report from August 2005 indicated that over the past year Plaintiff had been in the ER at least six times due to asthma. (*Id.* 271). Further, his treating practitioner Robert Shaffer noted in February 2007 that Plaintiff was "having continued problems with

asthma/COPD", in July 2007 that while asthma "has been controlled with his present regime of meds" he "still has some times when his lungs are tight and he has to use his portable neb", and in November 2007 that Plaintiff "was just barely doing well" with his asthma treatments" and was "having to do his nebs to the max". (*Id.* 370-73.) Further, Robert Shaffer opined in a Pulmonary RFC Questionnaire in 2008 that "even with meds will have acute attacks" (*Id.* 386.) The ALJ did not properly assess this evidence and, again, appeared to selectively apply the evidence on this issue. Thus, I find that the ALJ's conclusion that Plaintiff's asthma was well controlled by medication is not supported by substantial evidence and must be reassessed on remand.[2]

Further, the fact that Plaintiff's asthma may have been well controlled when he saw his physician (*id.* 272, 274) or that Plaintiff was "stable on current meds" (*id.* 310) does not necessarily mean that the ALJ could ignore medical evidence that Plaintiff still had effects from his asthma which could impact his ability to work. The Third Circuit provided a meaningful discussion of when an impairment is "controlled" by medication or treatment in *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429 (3rd Cir. 1999.) It stated:

> We hold that "control," as used here, means that the treatment has been so successful that the disease can be considered effectively neutralized. Webster's Dictionary supports our holding. It defines "to control" as: "to exercise restraining or directing influence over ... to have power over ... to reduce the incidence or severity of especially to innocuous levels." Webster's Ninth New Collegiate Dictionary 285 (1988) (emphasis added).

---

[2] On remand, the ALJ must keep in mind that his or her credibility judgments "'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted).

> . . . In addition, the context in which the phrase "controlled by" appears in the Appendix is further reinforcement for our conclusion that the phrase should signify something more than that a treatment is merely affecting the disease.

*Id.* at 432.

In this case there was medical evidence that supported Plaintiff's complaints regarding continued impairments associated with his asthma, and the ALJ thus had to adequately assess the issues. For example, there is evidence that supports Plaintiff's testimony that he often had to use nebulizers throughout the day. (Tr. 377-78-Plaintiff "uses nebulizer 5-6 times a day for his asthma"; 251-"Has been doing his nebulizers at home without much relief", 255-"asthma has been worse. . .he is wheezing and notes inhaler and nebulizer not effective having to use on hourly basis with temporary relief"). Robert Shaffer noted that Plaintiff "has frequent bad days where he has to have neb[ulizer] txs during the day" which makes it difficult for him to hold a job. (*Id.* 217, 219.) The ALJ did not properly take this evidence into account or assess how needing such treatment throughout the day would impact his ability to work.

There is also evidence that supports Plaintiff's complaints that being around people may exacerbate his asthma. Robert Shaffer noted in a progress report that Plaintiff was afraid he might have an asthma attack during jury duty or need a nebulizer treatment, that he cannot tolerate any viruses or his asthma becomes severe enough that he cannot leave the house, and that he is afraid to be around people, even his son, for fear of catching a virus. (Tr. 217, 219.) The Pulmonary RFC Questionnaire made medical findings on these issues supporting Plaintiff's complaints. It stated, "Even with meds will have acute attacks", "on chronic meds" and "Pt. often gets a URI [upper

respiratory infection] if around a crowd that sets off his asthma so has to avoid people". (*Id.* 386.)

The ALJ did not address any of the evidence from Robert Shaffer and his findings as a treating source other than the Questionnaire. He said as to that document that it was consistent with the RFC he found as to Plaintiff "with the exception of a need to avoid people, which is not supported by this medical source's own treatment notes . . . ." (Tr. 19.) However, Robert Shaffer had reported a need to avoid people in his notes, as indicated above.

The ALJ also rejected Robert Shaffer's finding about the need to avoid people because it "appears to be based solely on the subjective complaints." (Tr. 19.) However, Robert Shaffer's opinions in the Questionnaire appear to be medical findings, not something merely based on Plaintiff's subjective complaints. (*Id.*) An ALJ may not reject the opinions of a treating source "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating source's] opinions were based merely on Plaintiff's subjective complaints of pain. *Id.* If the ALJ were uncertain as to why Robert Shaffer issued this opinion, he should have contacted him to determine the basis for his opinions. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). This must also be properly assessed on remand.

As discussed previously, the ALJ also ignored Robert Shaffer's finding that even with his meds, Plaintiff will still suffer acute attacks. This must be taken into account on

-10-

remand, since RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1 (1996); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Thus, '[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Washington*, 37 F.3d at 1442 (emphasis in original) (quoting *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)).

Further, the ALJ failed to properly weigh Robert Shaffer's opinions as a treating source. An ALJ is generally required to give controlling weight to a treating source's opinion, so long as it is "well-supported" and "is not inconsistent with the other substantial evidence in [the] record." *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. Feb. 20, 2003) (citing 20 C.F.R. § 416.927(d)(2)). Further, the regulations require the ALJ to consider several specific factors in weighing a medical opinion. *Doyle v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)(1)-(6)). The ALJ's decision does not show that he weighed these factors. This is true even if Robert Shaffer as a nurse practitioner may not technically be an acceptable medical source. The ALJ is still required to consider his opinion and to provide specific, legitimate reasons for rejecting it. *Id.* Indeed, opinions from sources that are not "acceptable medical sources" may at times even be entitled to greater weight than that of a treating physician. SSR 06-03, 2006 WL 2329939, at *5 (2006).

I also find on remand that the ALJ must properly consider Plaintiff's complaints of side-effects of his nebulizer treatments and medications. While the ALJ referenced some of the prescriptions and medications Plaintiff was on (Tr. 17) as well as general complaints by Plaintiff such as fatigue (*id*. 16), he never tied the two issues together and addressed Plaintiff's complaints that he had significant side effects from his medications. This was error. *See Hamby v. Astrue*, 260 Fed. Appx. 108, 110 (10th Cir. 2008) ("The ALJ did not even make a perfunctory comment on . . . Ms. Hamby's . . . testimony concerning medication side effects limiting her ability to concentrate, drowsiness, use of an assistive device, and the need to alternate standing and sitting. Thus, in finding Ms. Hamby only partially credible, the ALJ applied incorrect legal standards and failed to articulate his reasoning with sufficient specificity. The legal flaws in the ALJ's RFC determination and his corresponding credibility findings means that the denial of benefits cannot be affirmed."); *see also Figueroa v. Sec. of Health, Ed. and Welfare*, 585 F.2d 551, 554 (1st Cir. 1978) ("The present record contains no medical evidence regarding whether appellant's medication was in 'unusually large doses' or whether its side effects might conceivably be disabling. While appellant's claim may be exaggerated, a layman is in no position to make any such determination on this record. It would have been appropriate for the [ALJ] to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question.").

There is also evidence in the record that Plaintiff's providers were aware that there may be effects to Plaintiff from his prescriptions, as there is a note showing that

Plaintiff was taught about the "[p]otential side effects of medication". (Tr. 222.) Further, Plaintiff claims that the record shows that he complained of symptoms of the type the medications are expected to produce, such as fatigue. On remand, the ALJ must properly assess this issue. *See Felisky v. Bowen*, 35 F.3d 1027, 1040 (6th Cir. 1994) (referring to the Physician's Desk Reference to determine the potential side effects of medications); *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997) (same).[3]

Finally, although not raised by Plaintiff I find I must address *sua sponte* two other issues from my review of the record that should be assessed on remand to ensure that any errors are corrected. As noted by the Fifth Circuit, "a reviewing court may not abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." *Bridges v. Gardner*, 368 F.2d 86, 90 (5th Cir. 1966); *see also Benson v. Comm'r of the Social Sec. Admin.*, No. 9:02-CV-57, 2004 WL 3237348, at *3 (E.D. Tex. 2004) ("this court, despite its general intention to address only points argued, cannot ignore obvious, blatant and prejudicial errors, irrespective of whether litigants identify and debate them.").

First, the ALJ relied on minimal daily activities as substantial evidence that Plaintiff does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). However, the ALJ must keep in mind on remand that "[s]poradic

---

[3] To the extent the Commissioner attempts to make *post hoc* arguments in support of his argument that the credibility analysis on this issue was adequate, this is improper and such arguments cannot be considered by the Court. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985) ("neither the ALJ, nor the Appeals Council cited this [argument made by the Commissioner] as a reason for denying benefits to Knipe, and we therefore should not uphold the agency's denial of benefits on this basis.").

diversions do not establish that a person is capable of engaging in substantial gainful activity". *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). While the ALJ pointed to Plaintiff's "wide array of activities of daily living", ability to travel back and forth to California and that he "regularly rides a motorcycle without a helmet" as "at odds with his description of his breathing related limitations" (Tr. 19), the ALJ again selectively applied the evidence on this issue. The ALJ ignored the evidence in the record that showed significant limitations in Plaintiff's daily activities because of his asthma. (*Id.* 38-43, 117, 119-124.) This evidence must be properly considered.

Second, there is evidence in the record that Plaintiff was diagnosed in 2005 by Dr. Jill McNaul with "Major depression, recurrent", "Occupational problems" and a GAF score of 50.[4] (Tr. 267.) Dr. Robert Goos also assigned Plaintiff a GAF score of 50 in May 2005 and a GAF score of 49 in March 2005. (*Id.* 281, 293.) "A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job). *Lee Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 (10th Cir. Dec. 8, 2004) (quoting DSM-IV.) The ALJ can not simply ignore such a low GAF score, as the ALJ is "tasked with determining the level of [the claimant's] functioning within the six domains." *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. 2007).

---

[4] "'The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.'" *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004)).

I acknowledge that the Tenth Circuit has noted that a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work." *Lee*, 2004 WL 2810224, at *3. "The claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere." *Id*. However, the Tenth Circuit has indicated that "[a] GAF score of fifty or less . . . suggest[s] an inability to keep a job." *Id*. Further, in this case Dr. McNaul specifically found that Plaintiff had problems in the occupational domain which lends support to fact that Plaintiff's GAF scores may impact Plaintiff's ability to work. (Tr. 267.) This must also be properly considered on remand.

To the extent that the ALJ relied on the Psychiatric Review Technique of May 24, 2007 to find that Plaintiff's mental impairments were not severe, I find that this did not provide substantial evidence to ignore the GAF scores and diagnoses referenced above. That report diagnosed an affective disorder and "depressed mood" which was not severe, with only mild difficulties. (Tr. 314-326.) However, the practitioner who prepared the records report only conducted a records review, unlike the examiners noted above who examined Plaintiff. The opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). More importantly, the notes of the examiner do not reference or take into account the diagnoses and low GAF scores described above by the examining doctors (Tr. 326). *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) ("findings of a nontreating physician based upon limited contact and examination are of suspect reliability" particularly where there is no "indication of careful study of [the claimant's] history or prior examinations").

III. CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated July 29, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge